**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DALLAS COBBS,

    Plaintiff,

v.

GEORGE J. PRAMSTALLER,
CRAIG HUTCHINSON, WILLIAM
BORGERDING, MARCELLA CLARK,
JAMES DILLON, ROLDERT FISCHRE,
KEITH IVENS, GREGORY NAYLOR,
BENCY MATHAI, BONITA DAVIS
NEIGHBORS, WALTER ORMES,
HARESH PANDYA, CHRIS SAMY,
individually and in their official capacities,
and CORRECTIONAL MEDICAL
SERVICES, INC.,

    Defendants.
_____/

CASE NO. 07-CV-14644

DISTRICT JUDGE ANNA DIGGS TAYLOR
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Dkt 66)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's request for injunctive relief, as this request is moot, and that in all other respects, the motion be **DENIED**.

**II.    REPORT**

    **A.    Introduction**

By order of U.S. District Judge Anna Diggs Taylor, this case was referred to the undersigned Magistrate Judge for general case management on November 7, 2007. (Dkt. 3.) The

pending motion is brought by the "MDOC Defendants," which collectively refers to the following individual defendants: George J. Pramstaller, Marcella Clark, Gregory Naylor, Davis Neighbors, and Haresh Pandya. (Dkt. 66 at 1.)

Plaintiff filed a response opposing Defendants' motion (Dkt. 71), and Defendants filed a reply. (Dkt. 75.) After review of the documents, I conclude that these motions are ready for Report and Recommendation without oral argument pursuant to E.D. Mich. LR 7.1(e)(2).

**B.     Background**

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") who was incarcerated at all times relevant to this litigation at the Ryan Correctional Facility in Detroit, Michigan. (Compl., Dkt. 1 at 2, ¶ 9.)

The facts are largely undisputed. Plaintiff's complaint alleges, through assigned counsel, that Plaintiff was diagnosed with cataracts in both eyes in 2004. (Dkt. 1 ¶ 18.) On July 27, 2004, Plaintiff was taken to consult with Dr. Ghulam Dastgir, ophthalmologist, for pre-approval for scans of both eyes prefatory to potential cataract extraction surgery. (*Id.* ¶ 19.) The eye scans were performed on August 23, 2004. (*Id.* ¶ 20.) On August 30, 2004, Plaintiff underwent cataract extraction and lens implant surgery of his right eye. (*Id.* ¶ 21.) Dr. Dastgir intended for Plaintiff to return for his left eye surgery within six weeks of his right eye surgery. (*Id.* ¶ 22.) On October 7, 2004, Dr. Piper, a physician at the Ryan Correctional Facility, requested that Plaintiff be given the left eye surgery as noted by Dr. Dastgir. (*Id.* ¶ 23.) On October 26, 2004, the Medical Services Advisory Committee ("MSAC") denied his request. (*Id.* ¶ 24.) At that time, the committee decision-makers included Defendants Borgerding, Clark, Fischre, Hutchinson, Naylor, Neighbors, and Pramstaller. (*Id.*)

On November 29, 2004, Plaintiff sent a health services request form asking why he had not received cataract surgery for his left eye. (*Id.* ¶ 25.) Around December 1, 2004, health services issued a response indicating that surgery had not been approved by CMS ("Correctional Medical Services"), the private corporation contracted to provide medical services for inmates. (*Id.* ¶ 26.) On December 8, 2004, Plaintiff filed a grievance against health services in an attempt to have his left eye surgery scheduled. (*Id.* ¶ 27.) Plaintiff's grievances were denied at all levels, relying on the MSAC decision and noting that cataract surgery for his left eye had never been approved. (*Id.* ¶¶ 28-32.)

On March 17, 2005, Plaintiff sent another health care request form to health services asking to see an optometrist for new glasses since the continued presence of the cataract on his left eye had changed his vision. (*Id.* ¶ 33.) Plaintiff was examined by an optometrist, Dr. McGraf, on May 10, 2005, but was informed that he could not get new glasses until the cataract surgery was performed. (*Id.* ¶ 34.) On May 18, 2005, Dr. McGraf submitted another request for cataract evaluation by an ophthalmologist for potential left eye cataract surgery. (*Id.* ¶ 35.) On May 31, 2005, CMS denied the request, relying on the MSAC decision of October 26, 2004. (*Id.* ¶ 36.)

On June 8, 2005, Plaintiff sent another health care request form to health services regarding the vision problems he was having due to the remaining cataract in his left eye. (*Id.* ¶ 37.) On June 24, 2005, Plaintiff filed another grievance about his vision problems and failure to provide cataract surgery. (*Id.* ¶ 38.) This grievance was denied indicating that surgery was not approved and that Plaintiff should be evaluated in 6-12 months by an optometrist. (*Id.* ¶ 39.) On November 2, 2005, Plaintiff sent yet another health care request form indicating that his vision was deteriorating and inquiring when he would be sent to an optometrist. (*Id.* ¶ 40.) A reply dated November 3, 2005, stated that Plaintiff was on the appointment list. (*Id.* ¶ 41.) Around December

3

14, 2005, Dr. McGraf requested that Plaintiff be given cataract surgery because the retina of Plaintiff's left eye could not examined because the cataract was so thick it blocked the doctor's view, even with instruments. The doctor also noted that Plaintiff had walked into objects on his left side due to a lack of peripheral vision. (*Id.* ¶ 42.) On December 27, 2005, CMS denied the request based on MSAC's 2004 denial. (*Id.* ¶ 43.) Dr. McGraf responded to the denial, Plaintiff was allowed to see Dr. McGraf, and Dr. McGraf again requested cataract surgery, citing glaucoma as a risk. (*Id.* ¶¶ 44-45.) CMS denied the request on March 15, 2006. (*Id.* ¶ 46.) Dr. McGraf continued to make requests and CMS continued to deny them, citing MSAC's 2004 decision. (*Id.* ¶¶ 47-48.)

Dr. McGraf appealed the decision himself, indicating that Plaintiff needed cataract surgery or the risk of secondary glaucoma would persist. The appeal was denied by MSAC on April 25, 2006. (*Id.* ¶¶ 49-50.) At this time, the MSAC consisted of Defendants Clark, Dillon, Ivens, Hutchinson, Mathai, Ormes, Pandya, Pramstaller, and Samy. (*Id.* ¶ 50.) MSAC's denial was reaffirmed on May 9, 2006. (*Id.* ¶ 51.)

Plaintiff continued to send health care request forms indicating that his vision in his left eye had deteriorated to the point that he had lost all vision in the eye. Dr. Piper twice requested that Plaintiff be sent to an ophthalmologist, but these requests continued to be summarily denied. (*Id.* ¶¶ 52-57.) On August 25, 2006, Dr. Cook examined Plaintiff, requested surgery, and suggested Plaintiff wear a patch over his left eye due to the deterioration in his vision. (*Id.* ¶ 58.) Further requests by Plaintiff and Drs. Cook, Piper, and McGraf were "auto-denied" and Plaintiff was placed on the "optometry list." (*Id.* ¶¶ 59-61, 68, 71-72.) Plaintiff's grievances were also denied, relying on the MSAC decision of April 2006. (*Id.* ¶¶ 62-64, 67, 69-70, 73-74.)

Counsel for Plaintiff states that he agreed to represent Plaintiff and informed defense counsel of his willingness to do so in February 2008. (Dkt. 71 at 11.) On February 26, 2008, the MSAC held a meeting and approved the surgery to remove the cataract on Plaintiff's left eye. (Dkt. 66 at 6.) Plaintiff underwent cataract surgery on April 14, 2008. Plaintiff has attended several follow-up appointments with Dr. Dastgir since the surgery. (*Id.* at 6-7.)

Plaintiff's first amended complaint avers that the actions and omissions described above constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment as made enforceable under 42 U.S.C. § 1983. (*Id.* ¶¶ 87-88.) Plaintiff further asserts that these acts and omissions caused the following damages: "a thick, dense cataract on his left eye that effectively blinded him in that eye and forced him to wear an eye-patch; headaches; vision problems; eye strain; inability to work his previous job as a locksmith; an increased risk of glaucoma and increased risk of complications from surgery when the cataract was finally removed; long-term loss of the use of his left eye; walking into walls and other people for lack of left-side and peripheral vision; loss of depth perception; anxiety; pain and suffering; humiliation and mental and emotional distress." (*Id.* ¶ 89.) Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.* at 11.)

C.   **Summary Judgment Standard**

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an

essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).

Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D. Analysis and Conclusions

1. Injunctive Relief

Defendants argue that Plaintiff's request for injunctive relief is moot. (Dkt. 66 at 9.) Since Plaintiff's request for injunctive relief seeks an order that "defendants [] provide all needed follow-up ophthalmological care to ensure that Mr. Cobbs' vision is fully restored" and Plaintiff has been provided with cataract surgery and follow-up care for his left eye, I suggest that Defendants are correct in arguing that Plaintiff's request for injunctive relief is now moot. Therefore, I recommend that Defendants' motion be granted on this ground alone. I turn next to the substantive claims made by Defendants.

### 2. **Qualified Immunity**

Defendants argue in their dispositive motion that Plaintiff cannot show that the cataract surgery was medically necessary prior to the recent approval of surgery by the MSAC and he cannot show that he was harmed by the delay. (Dkt. 66 at 7-9.) Defendants' also contend that their actions are shielded by the doctrine of qualified immunity. (Dkt. 66 at 10-11.) These arguments are intertwined.

The Supreme Court has explained that, pursuant to the defense of qualified immunity,"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor

could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment[.]

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step two unless a genuine issue of fact exists under step one. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). The court must only consider the facts known to the defendants at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### i. Whether a Constitutional Violation Occurred

Since "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" I must first address whether an Eighth Amendment violation has occurred. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)(citation omitted).

The Eighth Amendment to the U.S. Constitution protects convicted inmates from the imposition of "cruel and unusual punishments." U.S. CONST. amend. VIII. In the context of prison medical treatment, the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of this constitutional clause. The Court explained that, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. Thus, mere inadequate medical treatment is not sufficient to state a violation of the Eighth Amendment. In *Estelle,* the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. **Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.** In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (emphasis added) (quotations omitted).

Consequently, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See also Jones v. Martin*, 5 Fed. Appx. 434 (6th Cir. 2001) (prisoner who received extensive medical attention for a badly decayed tooth but experienced little pain relief failed to state a constitutional claim).

A violation of the Eighth Amendment can occur if it "is manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access

to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The *Caldwell* court found that the plaintiff-prisoner "did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention." *Id.*

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2005). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may also be decided by the *effect* of delay in treatment.'" *Id.* (emphasis in original).

The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* The plaintiff must show that the defendant's conduct demonstrated a level of deliberateness "'tantamount to an intent to punish.'" *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)). In 1994, the Supreme Court further explained this element "by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderfer*, 62 F.3d at 154 (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). In *Farmer,* the Court specified that for a government official to be deliberately indifferent, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S.

at 837. Finally, the government official must have "disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

When a plaintiff claims that delay in medical treatment amounted to a violation of the Eighth Amendment, he must "'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison Co., Ky,* 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994)). However, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore,* 390 F.3d at 899-900. A need for medical treatment is also "obvious" even where the "injury" is not if it is a condition of "one who has been diagnosed by a physician as mandating treatment . . . ." *Blackmore*, 390 F.3d at 897. In these instances, "it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

I suggest that this case presents a situation where the condition that was known to the Defendants – cataract of the left eye requiring extraction and lens replacement surgery as had been performed on the right eye – is obvious enough that a layperson would recognize the need such that actual harm from the delay does not need to be shown. *Blackmore*, 390 F.3d at 898. Not only was the condition "obvious," Defendants were expressly made aware of the need for surgery by the multiple requests made by Plaintiff and Plaintiff's doctors, and Defendants had already approved similar surgery on Plaintiff's other eye.

I further suggest that Defendants did not address this need in a "reasonable time frame." *Id.* Plaintiff has alleged, and Defendants have not disputed, that Plaintiff needed cataract extraction and lens replacement surgery on both eyes, that Plaintiff received surgery on the right eye, but that requests from both Plaintiff and several doctors to surgically remove the cataract on the left eye were summarily denied for **four years**, despite repeated requests from Plaintiff's doctors and Plaintiff himself. In addition, this refusal to act comes despite warnings that Plaintiff experienced a heightened risk for glaucoma and that Plaintiff's sight was deteriorating to the point that he was walking into objects. *Cf. Campbell v. Fry*, No. 89-6578, 1990 WL 15601, at *1 (4th Cir. Feb. 9, 1990) (vacating trial court grant of summary judgment in favor of defendant where approval for cataract surgery was denied "on the basis that it was elective in nature and delay would not cause any deterioration in the underlying condition as the cataracts could be successfully removed at a later date" where a doctor stated that plaintiff's "vision was deteriorating rapidly"); *Goodman v. Cal. Dep't of Corr. & Rehab.*, No. 07-01776-CJC (VBK), 2008 WL 4610268, at *7 (C.D. Cal. Oct. 14, 2008) (denying motion to dismiss where plaintiff received some medical care that he claimed was inadequate because defendants "failed to prescribe him any pain medication even though he was in excruciating pain nor did they provide follow-up treatment" for his eye injury); *Copenhaver v. Hammer*, No. 1:05-CV-675, 2007 WL 2406957, at *4 (W.D. Mich. Aug. 20, 2007) (denying summary judgment where Plaintiff's heart condition was evidenced by prescription drugs making it so obvious that a lay person would recognize the need for medical attention and because a reasonable jury could find that defendant's failure to take any action to maintain plaintiff's prescribed medications was in reckless disregard of a serious medical risk).

Even if this case were governed by the analysis in *Napier* rather than *Blackmore* with the result that Plaintiff would need to allege harm due to the delay in treatment, Plaintiff's allegations,

13

I suggest, meet this standard as well. Four years of needless suffering endured by Plaintiff while repeated requests from doctors and from Plaintiff were superficially denied, the documented deterioration of his vision, his walking into objects, and the eventual donning of an eye patch, are the type of unnecessary infliction of pain contemplated by the Supreme Court in *Estelle, supra*. *See also Garretson v. City of Madison Heights*, 407 F.3d 789, 794 (6th Cir. 2005) (denying summary judgment where plaintiff had informed police she was insulin-dependent yet they failed to provide her with insulin for a full day, causing her to suffer diabetic ketoacidosis); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2nd Cir. 1996) (reversing grant of summary judgment where plaintiff alleged he required prescribed eyeglasses to avoid double vision and loss of depth perception even though "these consequences do not inevitably cause pain, they adequately meet the test of 'suffering' that *Gamble* recognized . . . [because] [s]uch visual deficiencies can readily cause a person to fall or walk into objects, and [plaintiff] alleged that he has experienced such occurrences"); *Balisok v. Fleck*, No. 93-35485, 1993 WL 5243111, at *2 (9th Cir. Dec. 17, 1993) (vacating trial court's dismissal where plaintiff alleged that an "eye infection has returned, his vision has deteriorated" and where he alleged that the defendants "provided inadequate medical care and delayed medical treatment"); *Hunt v. Dental Department*, 865 F.2d 198, 200 (9th Cir. 1989) (denying summary judgment where plaintiff "alleged that the prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly, yet failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted.").

As I review this evidence, particularly the timing of events, I cannot escape the conclusion that surgery was not approved until counsel came forward indicating that he would be willing to accept the case. This fact buttresses the allegation that the delay amounted to an unnecessary and wanton disregard of a known and serious medical need.

I also note that Plaintiff seeks damages for "emotional injuries" (Dkt. 66 ¶ 89) and I suggest that Plaintiff has sufficiently pleaded and supported a claim that meets the Prison Litigation Reform Act's requirement that, to state a claim for emotional injury suffered while in custody, the prisoner must show physical injury. 42 U.S.C. § 1997(e). I suggest that the physical injury alleged here is more than *de minimus* and is sufficient to survive summary judgment. *Adams v. Rockafellow*, 66 Fed. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

### ii.     Whether the Right was Clearly Established

I suggest that the Eighth Amendment right to be free from cruel and unusual punishment through deliberate indifference to the serious medical needs of an inmate has been clearly established for many years. *See Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Therefore, I suggest that Defendants are not entitled to qualified immunity for the alleged Eighth Amendment violation.

### 3.     Conclusion

For the reasons stated above, I suggest that Defendants' motion for summary judgment be granted as to Plaintiff's request for injunctive relief only because it is now moot, and that the motion for summary judgment be denied in all other respects.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                              s/ *Charles E. Binder*
                                                            CHARLES E. BINDER
Dated: December 5, 2008                      United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Ronald W. Chapman, Paul D. Reingold, Brian J. Richtarcik, Clifton B. Schneider, and Mark V. Schoen, and served on District Judge Taylor in the traditional manner.

Date: December 5, 2008                    By    s/Patricia T. Morris
                                                                      Law Clerk to Magistrate Judge Binder