# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DALLAS COBBS,

      Plaintiff,                           CASE NO. 07-CV-14644

v.                                   DISTRICT JUDGE ANNA DIGGS TAYLOR
                                   MAGISTRATE JUDGE CHARLES BINDER

GEORGE J. PRAMSTALLER,
CRAIG HUTCHINSON, WILLIAM
BORGERDING,[1] MARCELLA CLARK,
KEITH IVENS,[2] GREGORY NAYLOR,
BENCY MATHAI, BONITA DAVIS
NEIGHBORS, HARESH PANDYA, CHRIS SAMY,
individually and in their official capacities,
and CORRECTIONAL MEDICAL
SERVICES, INC.,

      Defendants.[3]
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS HUTCHINSON, MATHAI, AND CORRECTIONAL MEDICAL
SERVICES' MOTION FOR SUMMARY JUDGMENT;
DEFENDANTS CLARK, NAYLOR, DAVIS-NEIGHBORS, PANDYA, AND
PRAMSTALLER'S MOTION FOR SUMMARY JUDGMENT;
AND PLAINTIFF'S MOTION TO AMEND/CORRECT
AMENDED COMPLAINT TO ADD CUSTOM AND POLICY CLAIM**
(Docs. 103, 104, and 108)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that:

---

[1]Defendants Samy and Borgerding returned their waivers of service on June 25, 2008, (Docs. 40, 45) and their answers were due on August 25, 2008, but they have not filed any pleading to date.

[2]There is no record of service of process on this defendant and he has not filed any pleadings to date.

[3]Other defendants were dismissed on September 23, 2008, and June 24, 2009. (Docs. 68, 90.)

1. Defendants Hutchinson, Mathai and Correctional Medical Services' motion for summary judgment (Doc. 103) be **GRANTED IN PART** and that Defendants Hutchinson and Mathai be **DISMISSED** for lack of the requisite personal involvement;

2. Defendants Clark, Naylor, Davis-Neighbors, Pandya, and Pramstaller's motion for summary judgment (Doc. 104) be **DENIED**; and

3. Plaintiff's motion to amend complaint to add custom and policy claim (Doc. 108) be **GRANTED.**

## II.   REPORT

### A.   Introduction

By order of U.S. District Judge Anna Diggs Taylor, this case was referred to the undersigned magistrate judge for general case management on November 7, 2007. (Doc. 3.) There have been previously-filed Reports and Recommendations (R&Rs) in this case that were adopted by Judge Taylor. (Docs. 77, 82, 94, 97.) Responses to the above-captioned pending motions have been filed. (Docs. 106, 113, 114.) After review of the documents, I conclude that these motions are ready for Report and Recommendation without oral argument pursuant to E.D. Mich. LR 7.1(e)(2).

### B.   Background

Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC) who was incarcerated at all times relevant to this litigation at the Ryan Correctional Facility in Detroit, Michigan. (Compl., Doc. 1 at 2.)

This case centers around Plaintiff's allegations that, despite being diagnosed with cataracts in both eyes in 2004, he was given surgery on only one eye and was repeatedly denied requests for an ophthalmology consultation and cataract surgery on the remaining eye by members of the Medical Services Advisory Committee (MSAC) and medical staff of Correctional Medical Services (CMS) for almost four years until he was finally provided with surgery on April 14, 2008. More detailed facts will be provided in the analysis that follows. This case has a rather lengthy procedural history that need not be recounted here. Included in that history is a previous R&R recommending denial of Defendants' motion for summary judgment (Doc. 77), which was adopted on February 12, 2009. (Doc. 82.)

### C.    Motion Standards & Governing Law

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Defendants have asserted the defense of qualified immunity. The Supreme Court has explained that, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying

the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; trial judges are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, ___U.S.___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440

F.3d 306, 311 (6th Cir. 2006)).  The court must only consider the facts known to the officers at the time the conduct was undertaken.  *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### D.    Analysis and Conclusions

### 1.    Personal Involvement - Defendants Hutchinson and Mathai

Defendants Hutchinson and Mathai assert that they should be granted summary judgment because they had insufficient personal involvement in deciding whether Plaintiff would receive the second cataract surgery and because they were not a proximate cause of Plaintiff's alleged injury.  (Doc. 103 at 28-31.)  Defendant Mathai argues that she did not participate in any Medical Services Advisory Committee (MSAC) decision not to authorize surgery and Defendant Hutchinson contends that although he attended one or more MSAC meetings, "only the MDOC CMO had the final authority to provide Plaintiff's second eye cataract surgery."  (Doc. 103 at 28.)  These Defendants state that "[w]hile the CMS Medical Director typically sat on the MSAC, Dr. Mathai did not assume that position with CMS until September 2007" and "[a]lthough there is evidence Dr. Hutchinson sat on the MSAC, he had no vote in the ultimate decision to deny or authorize the off-site referrals . . . [because] [t]he ultimate authority to decide the outcome of an appeal to the MSAC rested solely with the Chief Medical Officer of the MDOC, which, in this case, was Defendant Dr. Pramstaller."  (Doc. 103 at 30-31.)

Plaintiff contends that Defendants Hutchinson and Pramstaller were "present at both MSAC meetings, and Mr. Cobbs has retained as party defendants only those senior officials *who participated in the consensus agreement* at the two MSAC meetings when the requests for treatment were denied."  (Doc. 106 at 40-41 (emphasis in original).)  Plaintiff further contends that Dr. Hutchinson personally conducted CMS utilization reviews denying Plaintiff's surgery and that

"Dr. Mathai took over the role of CMS medical director in 2007 when Dr. Hutchinson left." (Doc. 106 at 41.)

Research has revealed one case addressing this very issue. In *Fisher v. Pramstaller*, No. 04-CV-72102, 2008 WL 2795813 (E.D. Mich. July 18, 2008), Judge Cleland concluded:

> Even if Plaintiff were able to show that MSAC made decisions that effectively denied him medical care, he has not demonstrated that Hutchinson is responsible . . . . even though MSAC discusses these appeals and 'reaches a consensus if possible' on whether a request should be granted, it is the CMO that has the ultimate authority to decide. . . . Hutchinson, as a member of MSAC, does not have any independent decision-making authority. . . . Thus, he was in no position to deny Plaintiff care even if he had been fully aware of Plaintiff's medical problems.

(*Id*. at *6.) The same is true in the instant case. Thus, I suggest that Defendants Hutchinson and Mathai are correct in arguing that their membership in the MSAC does not provide the level of personal involvement necessary to impose responsibility for any Eighth Amendment violation. I therefore suggest that Defendants Hutchinson and Mathai's motion for summary judgment be granted and that they be dismissed from the case.

### 2. Eighth Amendment - Defendants CMS, Pramstaller, Clark, Naylor, Pandya and Neighbors[4]

Defendants Pramstaller, Clark, Naylor, Pandya and Neighbors have also raised the defense of qualified immunity. Thus, the standards described above also apply to these defendants. (Doc. 104 at 4.) In addition, Defendants CMS, Pramstaller, Clark, Naylor, Pandya and Neighbors contend that "Plaintiff's left eye cataract was not an objectively serious medical need and Defendants did not believe that Plaintiff's left eye cataract posed a serious risk of substantial harm to Plaintiff." (Doc. 103 at 31-40; Doc. 104 at 8-10.) This defense implicates the Eighth

---

[4]If the Court disagrees with the previous section's analysis and finds that Defendants Hutchinson and Mathai did have the requisite personal involvement to remain in the case, then this section's analysis would also apply to them.

Amendment to the U.S. Constitution, which protects convicted inmates from the imposition of "cruel and unusual punishments."  U.S. CONST. amend. VIII.

### a.    Deliberate Indifference to Serious Medical Needs

In the context of prison medical treatment, the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of this constitutional clause.  The Court explained that, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Id.* at 106.  Thus, mere inadequate medical treatment is not sufficient to state a violation of the Eighth Amendment. In  *Estelle,* the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  **Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.** In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (emphasis added) (quotations omitted).

Consequently, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).  The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake*

*v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See also Jones v. Martin*, 5 Fed. Appx. 434 (6th Cir. 2001) (prisoner who received extensive medical attention for a badly decayed tooth but experienced little pain relief failed to state a constitutional claim).

A violation of the Eighth Amendment can occur if it "is manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The *Caldwell* court found that the plaintiff-prisoner "did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention." *Id.*

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2005). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may also be decided by the *effect* of delay in treatment.'" *Id.* (emphasis in original).

The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* The plaintiff must show that the defendant's conduct demonstrated a level of

deliberateness "'tantamount to an intent to punish.'" *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)). In 1994, the Supreme Court further explained this element "by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderfer*, 62 F.3d at 154 (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). In *Farmer,* the Court specified that for a government official to be deliberately indifferent, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Finally, the government official must have "disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

### b.     Record Evidence

A review of the medical evidence in the instant case reveals that Dr. Dastgir recommended left eye cataract removal in August 2004. (Doc. 103, Ex. F at 333.)[5] Nonetheless, the MDOC's MSAC upheld non-approval for an ophthalmology referral toward left eye cataract removal despite continuing requests from Plaintiff's optometrists and responses made to the MSAC in November 2004, May and December 2005 and January, March, and April 2006. (Doc. 103, Ex. F at 314, 320, 321, 322, 323, 325, 329.) In December 2005, Plaintiff's doctor noted that Plaintiff had trouble with depth perception and was walking into objects on the left side because of his loss of vision and that his vision in the left eye had deteriorated to 20/600. (*Id.* at 322.) In January and March 2006, Dr. McGrath stated that because of the density of the cataract in the left eye, he was unable to examine the eye for possible glaucoma or other eye health issues. (*Id.* at 314.) Dr.

---

[5]Exhibit F was filed under seal; I also note that the page numbers are not necessarily in order, but reflect the number stamped at the bottom of the referenced page.

McGrath also noted that Plaintiff's hypermature cataract surgery is more complicated and that there is risk of secondary glaucoma. (*Id.* at 320.)

On April 25, 2006, the MSAC upheld the non-approval, commenting as follows: "closely monitor for increase in interocular pressure and resubmit if pressure increases." (Doc. 103, Ex. F at 313.)

On July 27, 2006, Dr. Piper informed the MDOC Bureau of Health Care that Plaintiff was "losing sight in left eye," that his vision had been 20/40 in 2004, but had deteriorated to 20/400 by December 2005 and that referral to an ophthalmologist had been recommended at that time but had not been approved. (Doc. 103, Ex. F at 312.) The MSAC had indeed disapproved left eye cataract removal on October 26, 2004. (Doc. 103, Ex. F at 326.)

On August 25, 2006, the MDOC Bureau of Health Care noted an "urgent" need for referral because Plaintiff had an "opaque white pupil" and "extreme photophobia - subjective and objectively" and that Plaintiff "wears patch on left eye to function." (Doc. 103, Ex. F at 305.) Plaintiff's father wrote to Defendant Pramstaller and Defendant's response was that Plaintiff was being "monitored closely" and that "[m]ultiple physicians have reviewed his case and all agree with the current treatment plan." (Doc. 106 at 20, Ex. E at 8.)

The MDOC Bureau of Health Care Services again denied the request to have cataract removal surgery performed on Plaintiff's left eye in June, July and August 2007, and was unpersuaded by the doctor's notations that he "cannot view the retina" because of the "dense cataract." (Doc. 103, Ex. F at 293.)

Plaintiff filed this lawsuit on October 30, 2007. (Doc. 1.) Plaintiff continued to complain to the MDOC, adding in October and November 2007 that he was having headaches caused from straining to see out of his left eye. (Doc. 103, Ex. F at 61, 64.) Defendant Pramstaller filed a

waiver of service on December 6, 2007, and his counsel filed an appearance on December 13, 2007. (Docs. 8, 9.) On January 15, 2008, Defendant Pramstaller filed a motion for summary judgment arguing lack of personal involvement and qualified immunity. (Doc. 12.)[6]

In February 2008, Dr. Dastgir noted that Plaintiff's "left fundus absolutely cannot be visualized due to density of the cataract" and that Plaintiff's double-vision was caused by the "extremely advanced cataract." (Doc. 103, Ex. F at 35-36.) Plaintiff was again denied approval for surgery at the MSAC's February 26, 2008, meeting. (Doc. 23 at 8.) Sometime in February 2008, Plaintiff's counsel agreed to represent Plaintiff and notified defense counsel of his intention to do so. (Doc. 106 at 8.)

Left eye cataract surgery was again recommended by Dr. Piper on March 3, 2008. (Doc. 103, Ex. F at 32.) On March 7, 2008, Plaintiff filed a motion to supplement his motion for preliminary injunction, noting that a "February 26, 2008, visit to the ophthalmologist revealed that the cataract is now hypermature and in need of a more complicated surgery . . . ." (Doc. 22 at 3.)[7] Three days later, an "outside consultation request was created on March 10, 2008" at which time Plaintiff was approved for the requested surgery. (Doc. 23 at 8.) On March 25, 2008, Defendant Pramstaller filed another motion for summary judgment arguing that since Plaintiff had been approved for cataract removal surgery for his left eye, his claim for injunctive relief was moot. (Doc. 23.) On March 27, 2008, an order assigning counsel for Plaintiff was entered. (Doc. 24.)

In April 2008, less than a month after counsel was assigned for Plaintiff, he underwent left eye cataract removal surgery performed by Dr. Dastgir. (Doc. 103, Ex. F at 189-90.) Plaintiff's

---

[6]Defendant withdrew the motion on April 11, 2008. (Doc. 29.)

[7]This motion was withdrawn on April 14, 2008. (Doc. 34.)

post-operative wound leaked for a period of time but was "looking excellent" as of May 27, 2008. (Doc. 103, Ex. F at 14.)

### c. Discussion

At the threshold, I agree with Defendants that the Sixth Circuit does not appear to have yet addressed whether a cataract constitutes an objectively serious medical need or what would constitute deliberate indifference to such medical need. (Doc. 103 at 33.) However, I note that visual deficiencies caused by a failure to provide eyeglasses has been held to meet the standard and I suggest that logic would not dictate a different conclusion where visual deficiencies are caused by a cataract rather than an absence of eyeglasses. *See, e.g., Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (reversing dismissal of Eighth Amendment claim and holding that serious medical need was alleged where failure to provide eyeglasses caused the plaintiff to fall walk into objects due to double vision and loss of depth perception).

I next suggest that Defendants' reliance on *Stevenson v. Pramstaller*, No. 07-cv-14040, 2009 WL 804748 (E.D. Mich. Mar. 24, 2009), is misplaced. In *Stevenson,* the court found that Plaintiff had "failed to rebut the evidence provided by Defendants from Plaintiff's medical files that indicates Defendants' decision was motivated by a medical finding that his eye condition was stable for almost a year." *Stevenson,* 2009 WL 804748 at *5. In the instant case, there is no medical opinion indicating Plaintiff's condition was stable, i.e., this is not a case presenting a difference of opinion between an inmate and his doctor. Here, the medical opinion evidence showed that Plaintiff's condition consistently worsened, that Plaintiff's vision had deteriorated to 20/400 or worse, that Plaintiff was walking into objects and had to wear a patch over his eye, and that Plaintiff's doctors unanimously expressed their concern over his eye health due to their inability to examine the eye because the cataract had so thoroughly covered the interior structures

of the eye.  Yet, nothing was done until after the instant lawsuit was filed and defense counsel had been informed of Plaintiff's success in securing counsel to represent him.

I therefore suggest that the instant case presents a scenario where the evidence of a serious medical need to which Defendants were deliberately indifferent is sufficient to defeat a motion for summary judgment filed by Defendants.  *See Campbell v. Fry*, No. 89-6578, 1990 WL 15601, at *1 (4th Cir. Feb. 9, 1990) (vacating trial court grant of summary judgment in favor of defendant where approval for cataract surgery was denied "on the basis that it was elective in nature and delay would not cause any deterioration in the underlying condition as the cataracts could be successfully removed at a later date" where a doctor stated that plaintiff's "vision was deteriorating rapidly"); *White v. Snider*, No. 3:08-cv-252-RCJ(VPC), 2010 WL 331742, at *5 (D. Nev. Jan. 26, 2010) ("Both doctors Koenig and Jensen found the removal of the cataract worthy of comment in numerous reports to prison officials.  Furthermore, plaintiff notes his inability to see in the prison yard and his increased headaches.  Therefore, plaintiff has shown a serious medical need."); *Wilson v. Turner*, No. 6:08-cv-06056, 2009 WL 1060509, at *5 (W.D. Ark. Apr. 20, 2009) (denying summary judgment because serious medical need shown where after doctor recommended cataract surgery, over a year passed and vision deteriorated, affecting his daily living); *Padichit v. Unknown Cook County Officials,* No. 04-388-MJR, 2006 WL 1897518, at *3-4 (S.D. Ill. July 11, 2006) (finding complaint stated objectively serious medical need where plaintiff was denied cataract surgery despite intense headaches and fact that he could not see out of right eye); *Dunn v. Harper*, No. 1:08-CV-2366-TWT, 2008 WL 4534026, at *2 (N.D. Ga. Oct. 3, 2008) (finding complaint passed screening provision of PLRA as to deliberate indifference claim where the plaintiff alleged eye doctor informed him that cataract surgery was necessary and that plaintiff should see an eye specialist but after several months, plaintiff had still not seen the specialist); *Cf.*

*Hurt v. Mahon*, No. 1:09CV958(LO/JFA), 2009 WL 2877001, at *2 (E.D. Va. Aug. 31, 2009) (no serious medical need where Plaintiff had no medical evidence supporting need for cataract surgery); *Rylee v. Bureau of Prisons,* No. 8:08-CV-1643-PMD-BHH, 2009 WL 633000, at *8 (D.S.C. Mar. 9, 2009) (no deliberate indifference where undisputed medical evidence showed that plaintiff did not meet criteria for cataract surgery, visual acuity less than 20/60 in both eyes, since his visual acuity was never less than 20/30 in his left eye); *Williams v. Shelton*, No. 06-95-KI, 2008 WL 2789031, at *3 (D. Or. July 16, 2008) (no deliberate indifference where cataract removal in right eye was performed but denied with respect to his left eye where ophthalmologist "noted that the cataract in the left eye was not of immediate importance but would benefit from cataract removal"); *Samonte v. Bauman*, No. 05-00309-HG-KSC, 2006 WL 2092384, at *7 (D. Hawaii July 26, 2006) (no deliberate indifference where no physician indicated plaintiff's cataract required surgery, where there was no dispute among the physicians, despite the fact that one physician recommended and completed cataract surgery two years later).

To the extent that other health care policies regarding qualification for second cataract surgery are relevant under this claim rather than the policy, practice or procedure claim discussed below, I further suggest that even though these other policies are not dispositive of the instant claim, Plaintiff has sufficiently rebutted Defendant's contention that Plaintiff would have fared no better under these other policies. (Doc. 103 at 23, n.20; Doc. 106 at 34-36.) I further note that none of these other policies recommend ignoring symptoms such as blurred vision, walking into objects, or complete blindness, which were all suffered by Plaintiff and reported to Defendants.

I further suggest that Defendants cannot rely on policy to relieve them of their constitutional imperative to avoid deliberate indifference to serious medical needs. *See White v. Snider*, No. 3:08-CV-252-RCJ(VPC), 2010 WL 331742, at *6 (D. Nev. Jan. 26, 2010) (denying summary

judgment because a "factual issue remains as to whether defendants surrendered professional judgment and dismissed complaints based on the mere categorization of cataract removal as 'not medically necessary' under the NDOC regulations which categorizes cataract surgery as not 'medically necessary'").

Finally, I suggest that the subjective portion of the Eighth Amendment test and the objectively unreasonable prong of the qualified immunity test are both also met in this case.[8] Plaintiff and his doctors repeatedly communicated Plaintiff's needs and Defendants have not asserted that they were unaware of Plaintiff's needs. Accordingly, I recommend that Defendants' motion for summary judgment be denied as to this ground.

### 3. Policy, Practice or Procedure - Defendant CMS

### a. Plaintiff's Motion to Amend

Defendant CMS argues that it is entitled to summary judgment because "there is absolutely no evidence that CMS maintained an unconstitutional policy, practice or procedure that anyone relied upon resulting in injury to Plaintiff." (Doc. 103 at 41-45.) This topic is also addressed in Plaintiff's motion to amend the Amended Complaint to add a custom and policy claim, which was filed on December 23, 2009. (Doc. 108.) Defendants did not respond to the motion. Plaintiff indicates that although one could argue that a custom or policy claim was implied in the statement of the Eighth Amendment claims, it is not explicitly stated. (Doc. 108 at 3.) Therefore, Plaintiff seeks to amend the Amended Complaint to add the following paragraph:

---

[8]I note that during his deposition, Defendant Pramstaller indicated that discrepancies in vision between two eyes caused by a remaining cataract in one eye can be reconciled by placing a patch over the affected eye. Counsel then asked Defendant Pramstaller, if a patch fixes the problem, then why not refuse to perform second cataract surgeries at all? Defendant Pramstaller responded, "That's not a very humane way to treat people." (Doc. 106, Ex. H at 74.)

> The customs and policies of the MDOC and CMS, Inc., as adopted, implemented, and/or applied by the named MDOC and CMS supervisory officials, were a proximate cause of the denial of Mr. Cobbs' rights under the Eighth Amendment.

(Doc. 108 at 4.)

When a party wishes to amend a pleading after the opposing party's responsive pleading has been served, it may only do so by leave of court or by written consent of the adverse party. FED. R. CIV. P. 15(a). When a motion for leave to amend is before the court, Rule 15(a) provides that "leave shall be freely given when justice so requires." *Id.* "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality," *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995), because, despite the Rule's liberality, leave to amend "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision to grant or deny a motion to amend pleadings is left to the sound discretion of the district court. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990).

> When determining whether to grant leave to amend, the court is to consider several factors:
>
> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

In the instant case, Plaintiff notes that Defendants have alleged in their motion for summary judgment that any policy was not unconstitutional, so Defendants have "essentially assume[d]" that the claim has been averred. (Doc. 108 at 3.) There has been no allegation of bad faith or any

repeated failure to cure deficiencies. I suggest there has been no undue prejudice since Defendants have failed to respond to the motion and since Defendants appeared to have assumed the claim was alleged. Therefore, I suggest that Plaintiff's motion to amend be granted.

**b.    Analysis**

Because Plaintiff's proposed amendment simply asserts the claim but does not seek to add any factual averments, I next consider the substance of Defendant CMS's argument based on the policy, practice or procedure claim. Defendant CMS contends that summary judgment should be granted because Plaintiff has not come forward with sufficient evidence to support the claim that CMS maintained an unconstitutional policy, practice or procedure. (Doc. 103 at 41-45.) Defendant CMS argues that its policy was not unconstitutional, i.e., that the second cataract surgery would be approved if a patient had any of three conditions: (1) diabetic retinopathy; (2) posterior subcapsular glare; or (3)great discrepancy in vision. (Doc. 103 at 42.)

Plaintiff counters that the MDOC and CMS routinely denied second cataract surgery based on the visual acuity of the other eye and that, "[d]espite this 'pass-through' list the MDOC and CMS had a custom or policy of denying cataract surgery without regard to other relevant factors, such as visual acuity in the affected eye, blurred or double vision or strain in the good eye, the level of pain or discomfort, or the disruption in daily living caused by the poor vision or other side effects." (Doc. 106 at 44; Doc. 106, Ex. O (pass through list).) Plaintiff also argues that the "MDOC/CMS *intentionally* kept the utilization review standards from the treating doctors [because] [t]he 'pass-through' list was not shared with anyone outside the CMS UR department." (Doc. 106 at 45 (emphasis in original).) Plaintiff cites Drs. Piper and McGrath's deposition testimony indicating they were not aware what criteria the MDOC/CMS used to evaluate whether a candidate qualified for cataract surgery. (*Id.*; Ex. F at 17; Ex. G at 35-36.)

Thus, the parties do not dispute the existence of the policy; the dispute is whether the stated policy is constitutional. I therefore suggest that Plaintiff has sufficiently alleged and supported his claim to survive summary judgment for the reasons stated under the Eighth Amendment analysis.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: March 25, 2010                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: March 25, 2010          By____s/Patricia T. Morris_____
                                   Law Clerk to Magistrate Judge Binder